BETTY VÁZQUEZ ET AL., demandantes y recurridas, *v.* COMMERCIAL INSURANCE COMPANY, demandada y recurrente.

*Número:* R-72-359     *Resuelto:* 5 de marzo de 1974

*Vivas, Martínez-Texidor & Limeres,* abogados de la recurrente; *Héctor Lugo Bougal, Delia María Auffant* y *Delia Lugo Bougal,* abogados de las recurridas.

SENTENCIA

En demanda radicada ante el Tribunal Superior, Sala de Ponce, las demandantes en el caso de autos alegaron que la menor Ana María Fernández, de 10 años de edad, se encontraba recluida en la Clínica Dr. Pila cuando fue agredida por un hombre extraño al plantel. Se alegó consecuentemente que los daños sufridos por la niña y su madre se debieron a la negligencia de la institución médica consistente en no mantener la vigilancia adecuada.

Al contestar, se negó esto último.

La evidencia presentada por las promoventes de la acción demostró que alrededor de las 9:00 P.M., estando la menor en su habitación, su madre se retiró un momento a su hogar, encomendándole a una de las enfermeras del piso que la cuidara. La empleada del hospital, junto a su compañera de trabajo, visitó el cuarto de la niña, encontrándola dormida. Entonces se dirigieron a otra habitación a atender otro paciente. Estando allí escucharon gritar a la niña y al acudir en su auxilio encontraron en el cuarto a un hombre. Esto ocurrió entre las 9:30 y 10:00 de la noche. Posteriormente la niña relató que la persona aludida le besó las manos y trató de bajarle el pantalón de sus pijamas mientras le decía que

era un médico que la iba a examinar. El agresor fue identificado. No era paciente, visitante, ni empleado de la clínica.

Las reglas prevalecientes en el hospital prohibían la entrada de visitantes después de las 9:00 de la noche. Se desconoce cuándo lo hizo el intruso. También se prohibía la presencia en los pasillos de personas que no fueran pacientes o empleados.

Como resultado de los hechos citados las demandantes alegan sufrieron considerables daños, especialmente mentales.

El tribunal de instancia declaró con lugar la demanda. Acordamos revisar.

Para que exista responsabilidad de la que se conoce como aquiliana, es necesario que el demandante pruebe tres elementos: 1. que el demandado actuó negligentemente, 2. que el demandante sufrió un daño, 3. que el daño ocurrió como consecuencia próxima del acto negligente.

En el caso de autos las demandantes alegaron que había sido negligente el hospital por no contar con la suficiente protección. En la contestación se negó la imputación. Sin embargo en ningún momento las demandantes presentaron evidencia tendente a sustentar su punto. No se probó con qué medidas de seguridad contaba la institución ni por qué eran éstas defectuosas o insuficientes. No se probó actuación negligente alguna de parte de la Clínica Dr. Pila. Es el demandante el que tiene la obligación de probar su caso.

Se revoca la sentencia que dictó el Tribunal Superior, Sala de Ponce, Andreu García, J.

Así lo pronunció y manda el Tribunal y certifica el Secretario. Los Jueces Asociados Señores Rigau e Irizarry Yunqué no intervinieron. El Juez Asociado Señor Cadilla Ginorio disintió en opinión separada.

(Fdo.)  José L. Carrasquillo

*Secretario*

—O—

Opinión disidente del Juez Asociado Señor Cadilla Ginorio
San Juan, Puerto Rico, a 5 de marzo de 1974

A continuación expongo las razones por las cuales disiento
de la sentencia circulada en el presente caso.

Es cierto que los hospitales no son aseguradores de sus
pacientes; no obstante, entiendo que en el presente caso in-
cumplió el hospital su deber de vigilancia. Por el hecho de ser
enfermos las personas que allí se encuentran, es necesario que
se les proteja de su indefensión, ya que de todos es sabido que
de noche las puertas de sus cuartos permanecen cerradas sin
seguro, en la seguridad de que sólo personal autorizado en-
trará en los mismos. Se debe aplicar a los hechos de este caso,
lo establecido por el Tribunal en *Pabón Escabí* v. *Axtmayer*,
90 D.P.R. 20 (1964) donde hicimos responsable al dueño de
una hospedería "por los daños sufridos por uno de sus hués-
pedes en ocasión de haber sido éste asaltado a altas horas de
la noche, en un pasillo de dicho hotel por dos extraños que
entraron en la hostelería que por costumbre mantenía su
puerta principal de entrada abierta durante toda la noche sin
emplear y tener un celador o empleado otro alguno en la
referida entrada."

En el presente caso se trata de una niña de 10 años, que
por su edad requiere mayor protección [1] y más aún, cuando
había sido intervenida el mismo día de los hechos. Las enfer-
meras sabían que en ese momento se encontraba sola en una
habitación privada, ya que la madre de dicha menor, después
de cuidarla durante todo el día, a eso de las 9:00 P.M., salió
para su hogar con el propósito de tomar un baño y cambiarse

---

[1] "There have been frequent recoveries where infants sustained
injuries because of lack of nursing attention. It is important to note that
in many such instances some courts have held that a hospital has a higher
duty of care with respect to an infant than to an adult." 4B *Personal
Injury, Hospitals and Asylums*, sec. 1.06(16), págs. 289–290.

su uniforme de enfermera, ya que trabajaba como enfermera industrial en la Commonwealth Refining Company (CORCO), en el turno comprendido entre las 12:00 de la noche y las 8:00 de la mañana. La referida madre se proponía regresar a la Clínica antes de irse a su trabajo, para dejar junto a la menor demandante cuidándola a la abuela de ésta.

Antes de abandonar la Clínica, dicha señora madre de la menor habló con una de las enfermeras de turno a quien le informó que iba a ausentarse durante un corto tiempo; que la niña tenía mucho dolor y pedía algún medicamento que la aliviase; y luego de irse la madre, aplicaron codeína para el dolor.

De las Determinaciones de Hechos del tribunal de instancia surge lo siguiente:

"Según evidencia que fue ofrecida a este Tribunal y la cual ha merecido entero crédito al mismo, el incidente descrito ocurrió entre las 9:30 y 10:00 de la noche. La enfermera encargada del piso esa noche, Nancy Gómez Sánchez, vio a la menor demandante a las 8:30 de la noche y le administró codeína para el dolor. La niña le pidió que no cerrara la puerta del cuarto ni apagara la luz, a lo cual ella accedió. A las 9:30 de la noche la referida enfermera volvió a ver a la niña, esta vez acompañada de la otra enfermera del piso. La menor demandante estaba dormida y ellas apagaron la lámpara del techo y dejaron encendida una de mesa. Entonces, ambas enfermeras se dirigieron a la habitación número 301, donde se encontraba una paciente que hacía todas sus necesidades fisiológicas en la cama y había que cambiarla de ropa a menudo. Estando allí, las enfermeras oyeron un grito; salieron al balcón, pero no pudieron determinar de donde había procedido, de manera que permanecieron en la expectativa de que tal grito se repitiera para poder determinar el lugar de donde procedía. Nuevamente oyeron otro grito y en esta ocasión pudieron precisar que el mismo había salido de la habitación de la menor demandante. Cuando entraron a la habitación de ésta encontraron allí al desconocido. Este, al verlas, les dijo: 'Atiendan a esa nena que está nerviosa.', y salió de la habitación.

La enfermera Nancy Gómez se le fue detrás al hombre gritando: 'Cójanlo'. El hombre a su vez ripostaba diciendo que tenía una nena enferma que necesitaba sangre. Del conjunto de la evidencia presentada podemos determinar que dicho intruso pudo abandonar el hospital sin que persona alguna interceptara su salida del mismo."

En su sentencia el Tribunal dice que las demandantes no presentaron evidencia para demostrar que el hospital no contaba con la suficiente protección. Sin embargo, de acuerdo con lo anteriormente citado, surge claramente que no había persona alguna para detener a ese hombre en su salida del hospital, a pesar de gritar la enfermera que lo detuvieran. Creo que ésa es prueba suficiente y que dado los hechos de este caso no era necesario exigirle otra prueba adicional. Además, se supone que por lo menos haya un empleado o vigilante en la puerta del hospital que permanece abierta.

No queremos significar que la Clínica tenía que tener un guardián en la puerta de la habitación de cada paciente. Según la Determinación de Hecho Núm. 8 del tribunal de instancia, (²) las reglas prevalecientes en dicho hospital a la fecha de los hechos, prohibían la entrada de visitantes después de las 9:00 de la noche, hora en que éstos tenían que abandonar el mismo a menos que estuvieran autorizados a permanecer allí después de esa hora por los médicos que atendían pacientes en dicho hospital. Tampoco se permitía la presencia de particulares o visitantes no autorizados en los pasillos del referido hospital después de la hora mencionada. El asaltante, que según se expresa en la sentencia de este Tribunal, "le besó las manos y trató de bajarle el pantalón de sus pijamas, mientras le decía que era un médico que la iba a examinar", fue encontrado en la habitación por las enferme-

---

(²) La propia parte recurrente admite en su Solicitud de Revisión que: ". . . y firmemente cree que las determinaciones de hechos a las cuales llegó el Hon. Tribunal *a quo* están correctas y se ajustan a lo acontecido en la vista del caso." (Por esto, no es elevó la transcripción de la evidencia. La parte demandada no presentó prueba.)

ras que acudieron al segundo grito de la niña, el cual, al verlas, les dijo: "atiendan a esa nena que está nerviosa", y salió de la habitación. La enfermera Nancy Gómez se le fue detrás gritando "¡Cójanlo!", y éste a su vez ripostaba diciendo que tenía una nena enferma que necesitaba sangre. Este pudo abandonar el hospital sin que fuera interceptado ni detenido por persona alguna. Días más tarde fue localizado y detenido por la policía e identificado por la menor y las enfermeras. El intruso no era paciente ni empleado del referido hospital, ni tampoco tenía una niña, ni ningún otro familiar de paciente allí. La enfermera encargada del piso esa noche declaró que no sabe cómo entró dicho individuo al hospital esa noche.

En relación con la norma del hospital, a que nos hemos referido anteriormente, de no permitir la entrada de visitantes después de las nueve de la noche, el ilustrado juez sentenciador (Hon. José A. Andreu García, Juez), concluyó que la prueba no demostró la medida o medidas adoptadas por el hospital para hacer cumplir tal regla en la fecha de la ocurrencia de los hechos. Estoy enteramente de acuerdo con su conclusión de que:

"No bastaba con la prohibición únicamente, había que demostrar que la misma se ejecutaba en una forma razonablemente efectiva."

Igualmente coincido con la sala sentenciadora, cuando concluye:

"El hospital en este caso tenía el deber de ofrecer un grado de cuidado, atención y protección razonable. Esto se mide por normas de razonabilidad y prudencia. En ausencia de prueba clara que demuestre que el hospital en este caso había adoptado alguna medida razonable para controlar el acceso de cualquier persona al interior del mismo o a sus habitaciones, tenemos que inferir del hecho mismo de la presencia del intruso en el hospital a tal hora de la noche y de lo relativamente fácil que éste abandonó el mismo, que no se había adoptado una medida razonable para evitar el daño causado o que de haberse tomado, los agentes

o empleados del hospital no la habían puesto en práctica esa noche o fueron negligentes en el cumplimento de tal medida."

Y como sostiene dicho tribunal de instancia, el daño sufrido por la niña: ". . . pudo haberse previsto y evitado."

Tomando en consideración, como concluye el juez sentenciador, la corta edad de la niña, su condición física, debilitada por la intervención quirúrgica que se le había practicado ese mismo día, el hecho de estar bajo el efecto de la codeína que se le administró para el dolor; y el estado anímico de la menor, quien le expresó a las enfermeras su temor a quedar sola, evidenciado por la petición de que se dejase la luz encendida y no le cerraran la puerta de su habitación, coincidimos con él que la Clínica fue negligente al no proveer a dicho menor la vigilancia, protección y cuidado que las circunstancias del caso exigen.

Por las razones expuestas disiento de la sentencia de este Tribunal revocando la de la Sala de Ponce, del Tribunal Superior de Puerto Rico; y considero que, por el contrario, la misma debe ser confirmada.